Let me know if I appear to be yelling, because I'm not trying to. There's a big feedback. We'll call, well, we only have two cases on the docket this morning. We want to welcome you here, remind you we do have a time clock system that we would appreciate your observing, and point out that we have read the briefs and record excerpts. We have not necessarily been into the entire record, although with only two cases, we've been into more than usual of the record. And we'll call the first case of the morning, number 250787, Espinosa v. United States. Mr. Parenti.  Please, the Court. Again, my name is Mark Parenti. I represent Johnny Espinosa. The error in this case calls into question the integrity of the criminal justice system, which relies overwhelmingly on guilty pleas. The requirement that a court make its own independent determination of whether or not there is sufficient factual basis to support a conviction under a guilty plea exists to protect the defendant. And this is despite the agreement of the parties. In this case, conspiracy to traffic narcotics and trafficking or distributing narcotics are distinct crimes. They're not fungible. They do carry about the same punishment level, potentially, don't they, based on the amount of drugs? Yes, Your Honor, they do. However, and that's both under a statutory penalty and under guidelines, but the fact that the Sentencing Commission has made the administrative determination to lump conspiracy to distribute drugs, simple distribution, and attempt to distribute in one broad category does not change the fact that these are distinct offenses. And conspiracy to distribute drugs has been understood to be a crime. So just to follow up on Judge Jones's question, walk us through, if we were to agree with you and vacate the guilty plea and send it back, what would happen, practically speaking? Wouldn't he just end up being prosecuted for the possession with distribution and pleading guilty to that and ending up in the same place? I mean, what would be different? Well, practically speaking, we don't know what would happen differently. But we know there was an error in the PSR, and that error is on the first page, and that error says that the crime of conviction is conspiracy to distribute methamphetamine. He was indicted for both, right? He was indicted for the crime of conspiracy to distribute methamphetamine. I thought there was something about distribution at some point as well. In the complaint, the complaint was originally sworn out for a simple distribution crime. And then sometime between the complaint and this case being brought before the grand jury, it becomes conspiracy to distribute. I think the PSR was written in terms of distribution, wasn't it? Did I misread that? I read it on my device, and I thought it was giving the base offense level in terms of a distribution offense. The base level for distribution and conspiracy to distribute is the same. They're all lumped into one broad category under the offense category under the guidelines. Okay. And that lumping does not change the fact that the legislature has made these three distinct crimes with distinct elements. Well, let me ask you two questions. Number one, we're under plain error review, are we not? Yes, Your Honor. And isn't it normally the case that when a person is placed under oath at the guilty plea hearing and the judge asks him, did you do this? And he says, I did, that we take that very seriously and you're not supposed to contradict it. And in this case, the guilty plea agreement factual basis itself said I conspired. And he swore under oath, yes, I'm guilty of that. Why is that not sufficient to carry the government's burden? It's not sufficient, Your Honor, because the court has that independent determination it must make, because unwittingly a criminal defendant can swear under oath to committing a crime that he did not commit. And the facts in this case, the conduct that the facts represent, do not support that conviction. And just a recitation of the elements of the statute, as we've pointed out in our brief, don't qualify, don't meet that standard. What if the only evidence of murder was the defendant's confession, I stabbed John Doe? Would that not be enough to support a guilty plea, even if they don't have any other evidence that ties into John Doe? Here we don't have an admission to one of the elements of the crime, and that element is a plan. We do have a- He said he conspired. He said he conspired. He doesn't even have to know the name of people he conspired with. He could conspire with people on the street and not even know their name, right? He doesn't have to be buddies with them, does he? He doesn't, as Escajeda pointed out, the government isn't required to identify who his customers, who he's in agreement with or who's his suppliers. However, there still has to be sufficient facts to support the underlying conduct. And the fact that he uses the word conspire during his guilty plea, that word enough doesn't constitute such an admission that it would meet the elements of the crime. And here- Do you agree that the standard is whether the record is devoid of evidence? Those are the magic words, aren't they, from our case law? That's Suarez's case from 2018. Here the evidence is- the record is devoid of evidence. If we- of that conspiracy, once we follow Escajeda and we've stripped out those two controlled bodies, which Escajeda instructs us can't support proof of a conspiracy. What we're left with in this case is what was found a week later in the search of Mr. Espinosa's house, which were guns, some scales- And that's what happened in Escajeda, too. I mean, the ultimate holding in Escajeda was in a firm. Escajeda has a- the difference in Escajeda is we have extensive Mirandized admissions in that case. In Escajeda's case, Escajeda admits to selling four to five ounces of drugs a week for the past year and not having any occupation for the last seven years, except for being a drug salesman. Those are extensive admissions- That's a full record, which we're entitled to do on a plain error review. Your client also has prior convictions and so forth. It's not as if this was something where he was just scammed into these two buy-sell situations. He does have a prior conviction. However, as Rosales Marirez pointed out, the fact of his criminal history is not determinative about whether or not someone should go back for a plain error review on the fourth prong. And the fact that he had had this previous conviction doesn't preclude the government from having to prove or the judge from having to make that independent determination that the conduct here is sufficient for the crime of conviction. But the PSR mentions, and he actually has a bunch of prior convictions, and a bunch of those, a bunch of that bunch, a subset, are for drug crimes. And in the one that's plainly conspiracy says, I'm not going to take the fall for whoever it is. Which means, A, he knew he was involved with a distributor, and B, he wasn't going to take the fall for the distributor. So that's partly why I think there was – he admitted out of his own mouth that he knew what a conspiracy was. That previous conviction was for a distribution. But he still said, I'm not going to take the fall for – that's what the PSR says. And, of course, his attorney had the chance to challenge that if it was inaccurate. What's significant here is the facts in this case, not what happened in a prior case, which he had served his full term of sentence for. In this case, all we have is, once we strip out the true controlled buys, which can't support a conspiracy. And that was true back in 1965 when Judge Griffin Bell had his Sears opinion. It's even more true after the court's opinion in Escajeda. So it was clear that this was an error, that the very weak – if we look at a similar case, the side of this term, unpublished case Mendoza, the panel there found the evidence there was – the circumstantial evidence was weak. And that was a much greater level of circumstantial evidence where we had a man found in a pantry with 400 grams of cocaine, scales, a Coke spoon, and a shrine to a drug trafficking saint. In that case, the court found that that was very weak circumstantial evidence. And this case, the circumstantial evidence is even – Let's just assume, arguendo, we end up agreeing with you on prongs one and two. Now let's talk about prongs three and four. The government argues, well, heck, if you had been convicted of what you call simple distribution – I don't really know what's simple about it – but anyway, the simple distribution, you would have had exactly the same minimum sentence, exactly the same sentencing guidelines. So how can you possibly meet prongs three and four in this case? We meet prong three and four for two reasons. One, this is a constitutional error. It affected the constitutional right of my client to be indicted by a grand jury based upon a specific crime that his conduct met. And that crime, the crime of conspiracy, is not met by these facts. So there's a due process violation under prong three. In addition to that due process violation, my client was sentenced under a conviction for a much more prejudicial crime than distribution. And the government did not respond to this argument in my brief. That argument was that conspiracy is recognized as a distinct evil, a more prejudicial crime than distribution. Isn't that totally contrary to your earlier point about everything being in the same bucket? What's in the same bucket is the sentencing commission has made the administrative decision to lump conspiracy, simple distribution, and attempt. Right, and so it seems like they don't think that conspiracy is this much greater evil. And given that, I mean, again, talking about prongs three and four, can we really say that? And here the judge did not say, oh, my heck, this was a conspiracy. If it had just been a simple distribution, I would feel differently. The judge focused on the prior history of all of the convictions, and that was why this sentence was not the minimum sentence. We don't know exactly what the judge focused on. The fact that the sentencing commission, the so-called independent agency, has made this determination to lump these three crimes together doesn't make it. They're still substantively different. And the fact that the conspiracy, the agreement of one or more people to violate the drug laws, is a much more dangerous and harmful crime to society. Within that broad offense category that the sentencing commission has lumped these three crimes into, the judge determining where someone's sentence should exist on that range is going to be influenced by whether or not it was a conspiracy or a distribution. But there's no indication this judge was. I agree it could be. But this judge focused on the history. And that's something that this defendant is going to have to deal with regardless of what he's charged with, right? Well, on the other hand, there's no indication he didn't. We assume that the judge knew the correct crime of conviction. And we know that because it was on the first page of the PSR. It says conspiracy. Let me ask you another question that I don't think you touched on in your brief, and that is, normally in vacating a guilty plea it is the obligation of the defendant to show that he would, but for the error, he would not have pled guilty and would have insisted on going to trial. Your Honor, we did attempt to answer that argument. That language comes out of Domingo Benitez. Yes, but it's very clear that when judge, that standard is reflective of a Rule 11 advisement error, not a due process error that we have here. Do you have any authority for the proposition that that's limited, that Domingo Benitez is so limited? Well, my authority would be, I think the better authority is the opinion itself. The sentence before the cited passage that the government cites in its brief, the judge made clear that this was a Rule 11 advisement problem and not a due process problem. Well, I'm looking at United States v. Castro Trevino decided in this court in 2006, where Judge Garwood focuses on Domingo Benitez. And, you know, to show prejudice, and that has to do with the sufficiency of the factual basis. To show prejudice, Castro Trevino must show a reasonable probability that, but for the error, he would not have entered the plea. Yes, and that, we believe we meet that because it is probable that there would have been a different outcome. The probability exists because there was an error and the error was on the judgment of conviction. The reason for that probability is because conspiracy is a more harmful and threatening crime society. So there is a reasonable probability that if Mr. Espinoza is re-indicted on these same facts for distribution, as opposed to conspiracy, that the judge would consider the proper crime of conviction and give him a lower sentence. It's important to note in this case that Mr. Espinoza did not receive the bottom of the guideline range. He did not receive the minimum sentence. He received a sentence 20 months above the guideline range and 21 months above the minimum. So there is a possibility, a real possibility, that he could receive less crime. Well, he won't receive a three-level reduction if it goes back. Well, if it goes back, my client has the decision about whether or not to plead guilty and take an appeal. That is his right. But I mean, that's my point. He will not receive, and in fairness to you or your co-counsel, originally an Anders brief was filed in this case. So maybe that would weigh into the factor whether he would be entitled to a three-point reduction. But anyway, I'm just pointing that out. You have a chance for rebuttal.  Okay, thanks a lot. Mr. Durbin, nice to see you. It's been a while. I think I was here in July last, and it's a pleasure to come back. I think I was before you, Judge Haynes, the last time I was here, and I got your opinions all confused. I'm going to do better today on what you wrote. I think I got them confused last time. You don't remember, but I do because it embarrassed me. There was no error here is the starting point. It's the plain error standard. There was sufficient evidence for the district court to make a determination that there was a basis for finding that Mr. Espinosa was guilty of the conspiracy. That's what the question is. That's what Rule 11B13 is about, to ensure that the district court makes that kind of determination. To sort of go through some of your questions, Judge Haynes, you asked if it sent back what would happen or what could happen. He would face two substantive distribution of 42 grams each, and I think that the only conceivable difference, whether he was convicted of both of them or one of them, if he was convicted of both of them, his mandatory assessment would go from $100 to $200, and the district court would be able to impose a supervised release term, I think, of three years instead of five years, and whether or not it would do so. But that's what the difference is. As far as the punishment, the sentencing or the imprisonment punishment, this was done under the guidelines. It was based on the 84 grams that he distributed on two separate occasions to the Midland police, and that would not change. What about the argument that the judge considered the conspiracy to be more horrific than simple distribution, whatever that is? I don't know how to answer that because I don't see it that way. I don't perceive it that way. I don't perceive conspiracy as being some much more egregious offense, and therefore he's got some sort of a worse – I don't know what it is. Is it a worse reputation because it was conspiracy? Oftentimes, we charge conspirators they may not have committed substantive acts, but they were involved in the aiding and abetting of the conspiracy. And in this particular instance, the evidence established that Mr. Espinosa, he was the guy distributing the 42 grams on each occasion. So I don't really – I don't perceive that distinction. And Mr. Parenti argues that, well, there's a due process violation here that's different. This isn't cited, but I did find this looking to prepare. This court had an unpublished opinion, and Judge Jones, you asked, is there authority? It's Rodriguez-Sanchez, 773 Federal Appendix 236 in 2019. It specifically says, Rodriguez's claim he need not demonstrate a reasonable probability that he would not have pleaded guilty because he alleges a due process violation rather than a simple violation of 11b-3 is meritless. And it cites a Supreme Court case, United States v. Davila, 569 U.S. at 597, which was considering whether or not there's a difference between an 11c violation and due process. And the Supreme Court says there's no difference. They were given the same consideration. And Rodriguez-Sanchez was considering it in the context of a plain error standard. So the due process doesn't add anything. It's still a consideration under the plain error standard on prongs three and four. As for why I say there's no error, this case is very similar to Escajeda. It's the same police department, same judge, same prosecutor's office. In Escajeda, there were two controlled cocaine buys. Don't know from the opinion what the quantity was. In Espinoza, there were two controlled meth buys six weeks apart. Each one of them was 42 grams. In the first one, Mr. Espinoza said, I didn't have the additional half ounce, but I'll get it for you. He never did. But he indicated in his conversation under cover that he could go back and get the additional half ounce that was negotiated. After the second buy in both cases, police searched their residences. In the case of Mr. Escajeda, police found 100 grams of cocaine, more than 100 grams, a block in ammunition, and $6,000 in drug proceeds. In Mr. Espinoza's case, they didn't find drugs. They found two firearms. They found no proceeds, but they found distribution paraphernalia, distribution materials, which included digital scales, baggies, cut, and evidence of ongoing distribution. And so Mr. Espinoza, while he didn't have the proceeds on him and he didn't have the drugs in the house at the time, he's got the evidence, the indication. He is a some-level distributor. He's probably fairly low, distributed two ounces. And as you point out, Judge Jones, he had a prior conviction in 2011 for a case on facts that in some ways seem very similar to the facts of this case, in which he was distributing quantities of an ounce or two ounces that he was getting from another person. The court hasn't asked any questions about the buyer-seller because Escajeda says it doesn't apply as between Mr. Espinoza and the informant who was doing the buying. But Mr. Espinoza was a buyer from somebody else and then a distributor. So buyer-seller doesn't really inform this particular case. Well, I mean, the way they got to Mr. Espinoza was, according to the affidavit, that they had indication that he was out distributing. So it wasn't like these two events were the only events in his life that relate to drugs. And so I don't think that this notion that two buy-sells doesn't get you conspiracy when the other side is an informant necessarily means that that's all the evidence we had here. I agree. And it doesn't mean that it's irrelevant. It doesn't mean the court excludes it. If all there is is a buy-sell, that's not a conspiracy. In fact, the court's cases say that's inimical to conspiracy. The notion of conspiracy is a plan that comes together, and if you were to have a simple buyer and a simple seller and that's all your evidence was, you have one transaction, that's not sufficient to prove conspiracy. But this court has looked at multiple transactions as evidence of conspiracy and has also taken into consideration that there is a chain of supply that's at work here. And that is clear in Mr. Espinosa's case that he was part of a chain of supply. He wasn't the end purchaser. He wasn't purchasing for his own personal use. He was involved in the distribution process, and he was part of the chain of supply. All right, and how do you address prongs three and four? Let's assume, arguendo, we conclude there was error on prongs one and two. What would be your analysis of three and four? What's your argument there? Well, I think I don't see why Dominguez Benitez would not apply. Basically, he did nothing in the district court to indicate that he wanted his plea back, that he would have done something differently. And I don't think that simply characterizing it as a due process violation or it's a conspiracy offense establishes that he would not have entered the plea. The outcome, as you pointed out, Judge Haynes, is very likely to be the same. I'm not sure if North Carolina v. Pierce would prevent it from being more serious. We can't retaliate because somebody exercised their rights, but it's going to be the same. And you say that because the judge did not focus on the word conspiracy but focused on history? Absolutely. I mean, I think you accurately characterized the colloquy. And the judge basically said, well, I have to put you in for a longer time to protect us, not just to punish you but also to protect us. And whether it's called a conspiracy, whether it's multiple distributions, whether he's pled to a single distribution, it doesn't matter. The danger is the same, and his criminal history shows that he does pose some danger to us. I mean, if this had been a first offense, this might have been a different situation before the court. I think that's right. Even with a conspiracy charge, the judge may have gone with the minimum because it was a first time. I think that's right. I think the judge was very aware that he scored high on the criminal history category, and he had multiple drug convictions in the past. So as far as prong three is concerned, he doesn't meet his burden. And as far as prong four is concerned, I don't see on this record that a failure to address it somehow screams in the face and undermines the integrity of the process. As you know, the Supreme Court has made it pretty difficult for us to decline relief based on prong. I know they have, and I'm not necessarily urging the court to chart new ground or anything like that. But I think that even under that consideration, that this is not like a sentencing error where there really would be a different outcome, where the defendant could have been sentenced to the same but very likely would not if the error had not been made. This is a circumstance that the pre-sentence report, all they have to do is change what the offensive conviction is. So unlike Gonzalez-Morales, this is not a guideline error where they gave the wrong guideline and the court followed it. No. And it's not a case where – I don't believe this is a case where the mandatory minimum term of imprisonment would not apply if he is convicted of the substantive distribution offenses. So he wouldn't have to get a mandatory five years. But the court – or ten years. I'm sorry, it's ten years because of the prior conviction I think is what it was. No, it was 50 grams, so it was a mandatory ten years. That would not apply. The mandatory ten would not apply. But Mr. Espinosa specifically asked the district court, would you please sentence me at the mandatory minimum ten, 120 months? And the district court didn't. It declined to, based on the criminal history, based on his prior conduct, and sentenced him to 141 months in prison. The facts will not change. If this were to go back, the underlying facts, the evidence, I don't see how it would change unless somehow we've come up with some new witnesses. But on these facts, the outcome – there's no indication that the outcome would be different. Is it your perception that we have been receiving a – that a lot of defendants have been appealing from verdicts or judgments in Judge Counts' court? Ask me that again. I'm on tape. Is it the perception of your office that there seem to be more appeals coming up from Judge Counts' court? There are more appeals, but I think it's because he has probably been the busiest judge in the district. Probably there are more cases and more convictions. He did not stop trying cases. Interesting. He continued jury trials throughout the last 18 months. And so his docket has moved. And most of the cases that I have seen doing appeals for the last year have come out of Midland or Alpine. But I think it's because he's been the most active judge and he's moving the most. Okay. And the second question is – and I'm sorry it's not germane to this case, but I think you had finished your remarks, right? Has Diggle's – has our Diggle's opinion been a big issue in the courts of the Western District to your knowledge? We have had a number of appeals, and fortunately the appellate chief will not give me many of those because they drive me crazy. And, I mean, I look at it as I wish the courts would sit down with probation and get on the same forms. I really think that would be the solution to it. We can't solve this because we go to court for the sentencing and we may have proposed conditions of release that are in the pre-sentence report. And then somehow in the process of going from that oral sentence to the imposition of the written judgment, somebody looks at a different form. And I don't know whether that's what was in the – we've had the same problem with plea agreements. You try to update something. Well, you've got to get everybody in a place to update it. And if they don't, then somebody is going back to one that hasn't been updated, and then you end up with these inconsistencies. It's almost – it's not as simple as a clerical error, but I see it as a sort of a technology error that somehow in the process of getting from what the judge says here to what comes out of somebody's computer who is doing the form later, and then we're trying to defend it, and it's really not our supervision. Okay. Does that make sense? Yeah, that's a very good point. And my feeling – and I'll just end with this – and my feeling about it always has been for supervised release and probation, those are the courts. We appear as counsel to put on the evidence. Right. It's really – We exercise less discretion in those proceedings than we do in deciding who to charge and how to resolve that case. Yeah. Okay. That's very helpful. Thank you. Mr. Perani, rebuttal. Thank you, Your Honor. The U.S. Attorney's Office may not perceive a difference between conspiracy to distribute methamphetamine and the crime of distribution. That perception is not shared by the Supreme Court as set out in its – Yamina's Risseo case and is recognized by this court in Gore. Both the Supreme Court and this court recognize the distinct evil and the greater harm to society that conspiracy represents. As mentioned by my learned counsel, the judge in sentencing made a point of saying, we're sentencing you to protect us. Part of the calculation of that protection was the crime of conviction, that we have to assume that the judge full well understood what that crime was, and that crime was conspiracy and not distribution. There is an error in this case, and there is a great difference in this case than in Escajeda, and that's those extensive Mirandize statements. I will, Judge Jones, to your point, I see as well a great number more appeals on this very issue coming out of the Western, the Midland-Odessa Division. And this case almost, to me, hints of a law professor's hypothetical, trying to find out what the far range of the facts that can support a conspiracy conviction are. This case has gone beyond that. Once we've stripped out the two controlled buys and we're left with the scoops, the scales, and the guns, that circumstantial evidence does not evidence the concerted action that's required for a conspiracy conviction. And what about the statement, I'll get you a half ounce later? That statement, I'll get you a half ounce later, was part of the same transaction with this government informant. The original offer was I'll get you two ounces, and then he wasn't able to get him two ounces, and that he was able to get him 42 grams, and that half ounce is that extra amount that would have made up that two ounces. That's part of the same transaction. Let me ask you a question. How many doses of meth are in a half ounce? Fourteen. It depends on how, the tolerance of the meth addict. So it could be between a two-week supply, because about a gram a day, or it could be more. I don't know how careful meth addicts are about their meth. But that was part of that same transaction. Yeah, but you keep saying that, but Escoheda doesn't say you can't consider the transaction and what happened there. They're saying that isn't evidence of conspiracy. But that doesn't mean, what if during this sale to the confidential informant, he said, Oh, my buddy John sold me two ounces, and we have a good time together, we're good friends, and we work on drugs together. That would be evidence you could consider, even if that transaction with the confidential informant wasn't enough. So, I mean, I don't know that we can't look at the facts of what happened, but we cannot say that the sale to him was conspiracy. I think it's significant in Escoheda the court did consider the two seven-gram buys as part of the facts, which are referenced in the government's brief in that case, which this court could take judicial notice of. The fact that there was, if there was a more extensive discussion beyond I'm going to get you what we immediately bargained for, it's not, that is part of that same transaction, and I don't think it changes the calculus here. Because that conspiracy, if it were to exist, would be between that government agent, the government informer, and Mr. Espinoza. Why? I mean, you know, if he hadn't been a CI, he would have been a co-conspirator, but the point is you're not looking behind wherever Espinoza, Espinoza wasn't manufacturing the meth, he was getting it from somewhere. We don't know, we don't know that the facts don't support whether or not he was manufacturing meth or not. Well, excuse me, but if they raided his place and they didn't find any, I think that manufacturing capability. We know it all comes from Mexico anyway. And if he were, he would have been wise not to manufacture it in his house. The idea that he's part of this long chain of supply is a speculation. Why can't courts speculate based on what's obviously established? The fact that- I'm just sort of asking you rhetorically. I mean, it is a fact that all the meth comes from Michoacan in Mexico, right? I've learned that the only people who answer rhetorical questions are dogs and small children. So I will treat that as a rhetorical question. Thank you, Your Honors. We do believe there was an error in this case. And we hope the court exercises its discretion and vacates my client's conviction. Thank you. Okay, thanks a lot. We appreciate your court appointed, Ms. Perani, and we very much appreciate the great advocacy.